# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK M., <br>     Plaintiff, <br> v. <br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security Administration, <br>     Defendant. | Case No. CV 17-7388-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.
## **INTRODUCTION**

On October 10, 2017, plaintiff Mark M. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents what really are two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred by failing to find plaintiff

suffered from a severe mental impairment at step two; and (2) whether the ALJ erred by failing to consider plaintiff's mental impairment in determining plaintiff's residual functional capacity ("RFC"). Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 5-8; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-7.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered plaintiff's mental impairment at step two and in the RFC determination. Therefore, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was fifty-five years old on the alleged disability onset date, has a GED. AR at 99, 647. He has past relevant work as a sales representative. *Id.* at 90.

On December 13, 2013, plaintiff filed applications for a period of disability, DIB, and SSI, alleging he was unable to work because of a heart condition, problems with his arms, an inability to lift, and high blood pressure. *Id.* at 99, 122. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 108, 119, 132, 142, 168.

Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ on February 2, 2016. *Id.* at 42-97. The ALJ also heard testimony from Dr. Jack Lebeau, a medical expert, and June Hagen, a vocational expert. *Id.* at 44-59, 90-94. On May 4, 2016, the ALJ denied plaintiff's claims for benefits. *Id.* at 23-31.

Applying the well-known five-step sequential evaluation process, the ALJ

found at step one that plaintiff had not engaged in substantial gainful activity since November 29, 2013, the alleged onset date. *Id.* at 25.

At step two, the ALJ found that plaintiff had a severe impairment: ischemic disease status post coronary artery bypass grafts without complications. *Id.* The ALJ also found that plaintiff had the medically determinable mental impairment of an affective disorder, but it was not severe because it did not cause more than minimal limitations in plaintiff's ability to perform basic mental work activities. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 26.

The ALJ then assessed plaintiff's residual functional capacity,[1] and found plaintiff had the RFC to perform light work, but with the limitations that plaintiff could do: no more than frequent climbing of ladders, ropes, or scaffolds; no more than occasional balancing; no more than frequent stooping or kneeling; no more than frequent crouching or crawling; and no more than occasional exposure to extreme cold. *Id.*

At step four, the ALJ found that plaintiff was capable of performing his past relevant work as a sales representative. *Id.* at 30. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 30-31.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 229, 1-4. The ALJ's decision stands as the

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.
# DISCUSSION

## A. The ALJ Did Not Err at Step Two

Plaintiff primarily presents his argument as one of step two error, that the ALJ erred in finding plaintiff did not have a severe mental impairment. But plaintiff does not really argue this point, and eventually states that "whether the depression, anxiety, and insomnia rise to the level of *severe* is not the question." P. Mem. at 7. Instead, he argues the ALJ was required to consider his non-severe mental impairment in his RFC determination. *Id.* Thus, it is unclear whether plaintiff is in fact challenging the ALJ's determination at step two that plaintiff's mental impairment is non-severe. Assuming he is, however, the ALJ did not err.

At step two, the Commissioner considers the severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii).[2] "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (citation and quotation marks omitted). Nonetheless, "[t]he claimant [still] carries the initial burden of proving a disability." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

To establish a medically determinable impairment, it must be supported by objective medical evidence, not only the plaintiff's statements. *See* 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

Cir. 2005). "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ determined that plaintiff suffered from the severe physical impairment of ischemic heart disease, but he did not suffer from a severe mental impairment. AR at 25. The ALJ recognized plaintiff does have a medically determinable mental impairment, an affective disorder, but concluded it does not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities. *Id.* In making this determination, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders," which are known as the "paragraph B" criteria. *Id.* at 26. The four areas of function, in which the ALJ must rate the degree of functional limitation, are: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). If there are no more than mild limitations in the first three areas and no episodes of decompensation, the mental impairments are generally found to be not severe. 20 C.F.R. § 416.920(d)(1). The ALJ here found plaintiff had no limitations in the first three areas, and no episodes of decompensation. AR at 26. He consequently concluded plaintiff did not suffer from a severe mental impairment. *Id.*

In reaching this determination, the ALJ considered all of the evidence, including plaintiff's testimony, the medical records, and the medical opinions. *See id.* at 26-30. The ALJ discounted plaintiff's testimony regarding his mental impairment because: (1) plaintiff testified to receiving therapy, but there was no confirmation plaintiff received treatment for his mental impairment after his initial

evaluation; (2) plaintiff's testimony about experiencing a psychiatric breakdown after his bypass operation was not supported by the medical evidence; and (3) plaintiff testified to regularly flying to New York to take care of his elderly father. *Id.* at 29, 30; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (listing factors to consider in a credibility analysis). Plaintiff does not contest the ALJ's credibility findings. But plaintiff does challenge the ALJ's consideration of the medical evidence to some extent, although mainly with respect to the RFC determination, as will be discussed further below.

### 1. **The Medical Opinions and Records**

Plaintiff submitted medical records from the Los Angeles County Department of Mental Health and Dr. Michael Yadegari as evidence of his mental impairment. Because the Los Angeles County records are not signed by any specific health care provider, it is not clear whether the records were made by a treating or examining physician. Similarly, because it appears Dr. Yadegari only treated plaintiff for muscle pain and not mental health issues, it is not clear that Dr. Yadegari served as a treating or examining physician. The ALJ also considered the medical opinion of several non-examining State Agency physicians.

### a. **Los Angeles County Department of Mental Health**

Plaintiff submitted medical records from the Los Angeles County Department of Mental Health as evidence of his mental impairment. AR at 645-57. These assessments, which cover a period of three months between November 2015 and January 2016, do not include any health care provider's name. An initial assessment dated November 24, 2015 states that plaintiff reported experiencing "extended, recurrent bouts of depression and anxiety" since his heart surgery two years ago. *Id.* at 649. Plaintiff was diagnosed with a recurrent moderate major depressive disorder and prescribed Xanax. *Id.* at 649, 655-57.

On December 16, 2015, plaintiff complained of anxiety, panic attacks, and

trouble sleeping, and was prescribed Zoloft and Trazodone, another anti-depressant. *Id.* at 654. A checkup dated January 2016 notes that plaintiff is still complaining of anxiety and insomnia, but recommends no changes to his medication regimen. *Id.* at 652. Another checkup dated January 5, 2016 observes that plaintiff is stable and sleeping well with his anxiety under control, and recommends that plaintiff "continue meds as prescribed." *Id.* at 653. A client treatment plan dated January 19, 2016 sets short-term and long-term treatment goals for plaintiff that include "taking meds as directed and utilizing other therapeutic interventions" and "reduc[ing] number of anxiolytic medications from 3 to 1 within the next 9 months." *Id.* at 650-51.

### b. Dr. Michael Yadegari

As further evidence of his mental impairment, plaintiff provided a summary mental assessment completed by Dr. Michael Yadegari on January 5, 2016. *Id.* at 641-43. This assessment diagnosed plaintiff with recurrent, moderate major depressive disorder that is expected to last at least 12 months with a Global Assessment of Functioning ("GAF") score of 58/100. *Id.* at 641. The assessment also diagnosed plaintiff as having marked limitations when performing activities such as sustaining an ordinary routine without supervision, carrying out detailed instructions, responding appropriately to workplace changes, and maintaining attention for extended periods. *Id.* at 642. Dr. Yadegari noted that plaintiff was "tearful, sad, feels hopeless and anxious" and exhibited other symptoms that supported his diagnosis of recurrent, moderate major depressive disorder. *Id.* at 643. The assessment further estimated that plaintiff is likely to be absent from work as a result of his impairments more than three times a month, and that these limitations applied as far back as November 29, 2013. *Id.* at 643.

### c. State Agency Physicians

On March 21, 2014, Dr. Kevin Gregg, a non-examining state physician,

reviewed plaintiff's records and completed a Psychiatric Review Technique assessment for plaintiff. Dr. Gregg found that plaintiff did not have a severe mental impairment because plaintiff had no restrictions in activities of daily living, social functioning, or maintaining concentration, persistence, or pace, and experienced no extended periods of decompensation. *Id.* at 103-05.

On April 1, 2014, Dr. F. Greene, a non-examining state physician, reviewed plaintiff's records. Dr. Greene opined that plaintiff had some exertional, postural, and environmental limitations in performing work activities, but did not opine any non-exertional limitation for plaintiff. *Id.* at 106-07.

On May 28, 2014, Drs. F.L. Williams and Norman J. Rubaum, also non-examining state physicians, reviewed plaintiff's records at the reconsideration level, and affirmed the assessments of Drs. Gregg and Greene. *Id.* at 114. They found plaintiff did not have a severe mental impairment, and opined no functional limitation due to a mental impairment. *Id.* at 114-18.

On February 2, 2016, Dr. Jack Lebeau, a non-examining state physician, testified at plaintiff's hearing that plaintiff was capable of a medium level of physical exertion, and did not comment on plaintiff's mental impairment. *Id.* at 44-58.

### 2. **The ALJ Properly Rejected Dr. Yadegari's Opinion**

The Los Angeles County Department of Mental Health made an initial diagnosis that plaintiff suffered from a recurrent moderate major depressive disorder, but did not opine as to any functional limitations plaintiff might have. *See id.* at 649. Accordingly, this is insufficient by itself to show plaintiff suffered from a severe impairment. In the record, only Dr. Yadegari opined that plaintiff had more than mild limitations in any area due to a mental impairment, and therefore only Dr. Yadegari provided any basis to find plaintiff suffered from a severe impairment.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

The ALJ gave Dr. Yadegari's summary mental assessment no weight because there was no evidence showing Dr. Yadegari ever treated plaintiff for his

mental health issues. AR at 30. The medical evidence indicates that Dr. Yadegari is an internal medicine specialist who has treated plaintiff for shoulder and back pain since September 2015. *Id.* at 639-40, 644, 660. As the ALJ observed, "there is no evidence the claimant has ever received any regular ongoing treatment from Dr. Yadegari (other than the two visits in January 2016 for low back pain), or any mental health care whatsoever from this physician." *Id.* at 30. Accordingly, there was no indication Dr. Yadegari had any basis for his opinion as to plaintiff's mental health. *See* Social Security Ruling ("SSR") 96-2p ("A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.").[3] This was a specific and legitimate reason to reject his opinion.

Plaintiff does not challenge the ALJ's rejection of Dr. Yadegari's opinion. Without it, there was no evidence plaintiff's mental impairment was severe. Accordingly, the ALJ did not err at step two.

**B.     The ALJ Considered Plaintiff's Mental Impairment in His RFC Determination**

As noted above, plaintiff does not seriously challenge the ALJ's finding that plaintiff did not suffer from a severe mental impairment. Instead, plaintiff argues that the ALJ failed to consider the impact of plaintiff's non-severe mental impairment on his RFC to perform light, skilled work. P. Mem. at 8. Plaintiff alleges a non-severe mental impairment that precludes skilled work requiring reasoning, math, and language ability qualifies plaintiff for disability. *Id.*

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R.

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

11

§ 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*; *see* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Plaintiff argues that even if his mental impairment is not severe, the ALJ failed to consider the impact of a non-severe mental impairment on plaintiff's ability to work as a sales representative. P. Mem. at 7-8.

The ALJ found plaintiff had the RFC to perform light work with certain exertional, postural, and environmental limitations; however, he assessed no limitations related to a mental impairment. AR at 26. But that does not mean the ALJ failed to consider the evidence concerning mental impairments. In discussing the medical evidence, the ALJ noted references to insomnia, anxiety, and depression, which were controlled with medication. *Id.* at 28. The ALJ then considered the evidence and opinions regarding plaintiff's mental functioning from the Los Angeles County Department of Mental Health, Dr. Yadegari, and the State Agency physicians. *Id.* at 30. As discussed above, the ALJ rejected Dr. Yadegari's opinion, but he agreed with the State Agency physicians who opined no mental limitations. *Id.* As such, the ALJ considered whether plaintiff's mental impairment had any effect on his RFC, and determined it did not.

Plaintiff argues that since the State Agency physicians rendered their opinions no later than May 2014, they did not have an opportunity to consider the subsequent evidence in the file and factor it into their assessments, and therefore the ALJ should not have relied on these opinions. P. Mem. at 6. But the ALJ did not rely solely on the State Agency physicians' opinions. As discussed, he reviewed evidence in the record himself, including the evidence from 2015 and 2016, and found there was still no evidence of limitation in plaintiff's mental functioning, consistent with what the State Agency physicians opined. AR at 30;

*see Magallanes*, 881 F.2d at 750 (ALJ is responsible for resolving conflicts in medical testimony and ambiguities in the evidence) (citations omitted).  There was substantial evidence to support such a finding, including evidence from 2016 that plaintiff's anxiety was controlled and he was sleeping well on his medication regimen, and lack of evidence of any additional treatment after his initial evaluation at the County Department of Mental Health in November 2015, apart from medication management appointments.  AR at 30, 653.  And indeed, the Department of Mental Health records are devoid of objective medical findings or opinions as to functional limitations that would warrant a different RFC determination.

      Accordingly, the ALJ properly considered the evidence of plaintiff's mental impairment in determining plaintiff's RFC, and found no mental limitations.  This determination was supported by substantial evidence.

## V.
## **CONCLUSION**

      IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED:  March 28, 2019

_____
SHERI PYM
United States Magistrate Judge